374 So.2d 861 (1979)
TRINITY PRESBYTERIAN CHURCH OF MONTGOMERY, Alabama, a corporation, et al.
v.
Corrie H. TANKERSLEY, et al.
77-688.
Supreme Court of Alabama.
August 17, 1979.
Rehearing Denied September 14, 1979.
*862 V. H. Robison, Montgomery, Owen H. Page, Savannah, Ga., W. J. Williamson, Greenville, for appellants.
W. H. Albritton, Andalusia, J. D. Todd, Jr., and David A. Quattlebaum, III, Greenville, S. C., for appellees.
EMBRY, Justice.
This is an action by appellees/plaintiffs, Corrie H. Tankersley, et al., a minority of the members of Trinity Presbyterian Church of Montgomery, Alabama (Trinity Presbyterian Church), and John Knox Presbytery, against Trinity Presbyterian Church and a majority of the members of Trinity to obtain control of the church's corporate entity and thus obtain dominion, control, and use of the property owned by that corporation.
After trial before the court without a jury, a decision by the General Assembly of the Presbyterian Church in the United States (PCUS), which declared a resolution adopted by East Alabama Presbytery (now John Knox Presbytery) to be null and void, was held by the trial court to be ecclesiastical in nature and, therefore, to be accepted as determinative as to who were the proper members of the Trinity Church corporation having the right to the control, possession, dominion and use of the church property. Tankersley, et al., were held by the trial court to be the proper members. We reverse and render.
The determinative issue is whether the decision by the General Assembly of PCUS, rendered 14 June 1976,[1] is ecclesiastical in nature as applied to Trinity Presbyterian Church and, thus, binding on this court. We find that the portion of the above mentioned decision, which attempts to revoke permission to withdraw from PCUS and the Presbytery of East Alabama, given by the Presbytery of East Alabama to local churches such as Trinity Presbyterian, after such churches have acted and relied upon that permission, is not ecclesiastical in nature, and therefore, not binding on this court.
*863 This action was filed by the John Knox Presbytery of PCUS (by members of one of its Administrative Commissions) and six individual members of Trinity Presbyterian Church against the officers and trustees of Trinity Presbyterian Church and certain individuals as representatives of the class of the majority of members of that church.
The complaint alleged that (1) six members of Trinity Presbyterian Church have been specially designated by the John Knox Presbytery as the local congregation of Trinity Presbyterian Church; (2) Trinity Presbyterian Church was organized in 1891 as a church in PCUS and has been continuously a church in PCUS, subject to the constitutional jurisdiction of the Presbytery; and (3) the minority members of Trinity, designated by the PCUS as the true local congregation of Trinity, are entitled to the sole direction and control of the properties of the church corporation. The relief sought was an award to appellees/plaintiffs of dominion, control and possession of the church properties; an accounting of the church corporation's affairs; rent to be paid by appellants/defendants for the use of church properties; an injunction of appellants'/defendants' further use of the properties; and the injunction of appellants'/defendants' further use of the name of Trinity Presbyterian Church. Appellants/defendants answered, denying that appellees/plaintiffs were entitled to the relief demanded and raising numerous defenses, including estoppel and laches. After agreeing to a stipulation of certain facts, issues were joined and trial ensued. Thereafter, a judgment was entered granting the relief demanded excepting the requirement that rents be paid by appellants/defendants for the use of the church property. This appeal followed.
Trinity Presbyterian Church was organized by the appropriate Presbytery of the PCUS on 30 July 1891. The PCUS is a hierarchical or connectional church with a system of church government consisting of church courts in ascending order. The lowest level church court is the Session of the local church. It is governed by the Presbytery. The Synod is the next highest court.
It governs and reviews actions of the Presbytery. The highest court of the church is the General Assembly. These courts comprise the government of PCUS, and are not separate and independent tribunals. Each of these courts exercises exclusive original jurisdiction over all matters specially belonging to it; however, the lower courts are subject to the review and control of the higher courts, in regular gradation as provided for in the PCUS Book of Church Order.
The Session, the church court or governing body of a local church in the PCUS, is composed of the minister and ruling elders of the church; the latter are representatives elected by the local congregation. Each local church is a member of a Presbytery and its actions are reviewed by that Presbytery. On 4 November 1973 Trinity Presbyterian Church was a member of the East Alabama Presbytery in the PCUS which comprised a geographical area of Southeast Alabama and contained approximately sixty (60) churches. East Alabama Presbytery (now John Knox Presbytery) is in turn a member of the Synod of Alabama which has the same geographical boundaries as the State of Alabama and contains five Presbyteries. As mentioned earlier, the highest church court in PCUS is the General Assembly and it is the supreme governing body. The General Assembly is composed of thirteen Presbyteries which comprise the geographical area of the thirteen Southern states in the United States.
The governing instrument of PCUS is the Book of Church Order. The Fourteenth Printing, 1972, was the version of the Book of Church Order governing PCUS at the time the Presbytery of East Alabama adopted Trinity Presbyterian Church's resolution to withdraw from the PCUS. The Book of Church Order provided, and still provides, in chapters thirteen through nineteen, a system of review of the actions of the lower courts by the higher courts of PCUS.
On 18 March 1892 Trinity Presbyterian Church was incorporated by the members of *864 the church in accordance with the laws of this state. The name of the corporation at the time of incorporation was Central Presbyterian Church of Montgomery, Alabama. No reference to PCUS was mentioned in the instrument of incorporation. Subsequently, the certificate was properly amended to change the name of the corporation to Trinity Presbyterian Church of Montgomery, Alabama. In this amendment the purpose of the corporation was stated as follows:
"* * * the purposes of the corporation were the maintenance of a church for the worship and service of God * *"
Again there was no mention of PCUS. However, from the date of its organization until the adoption of its resolution to withdraw, Trinity Presbyterian Church was a member of PCUS.
Title to all property in dispute here was acquired by the church corporation. There has been no alienation or other disposition of the real property involved in this action. None of the property was acquired prior to the church's incorporation or after 4 November 1973. All of the deeds conveying the property in question simply recite the name of the corporation as grantee without reference to PCUS. The Trinity Presbyterian Church corporation has acquired and mortgaged property without permission or consent from PCUS. No agency or court of PCUS above the local church session and congregation has ever made any financial contribution, donation, or loan to Trinity Presbyterian Church.
Appellees/plaintiffs stipulated that title and right to dominion, control and use of the property at issue lies with the church corporation. They concede that PCUS has no proprietary or contractual interest in the property involved, except in the case of dissolution of the corporation as provided in Section 6-3 of the Book of Church Order. Appellees/plaintiffs contend that appellants/defendants are no longer members of the corporation and, therefore, have no right to dominion, use, or control of the property in dispute.
The parties stipulated that as of November 1973 there was no express provision in the Book of Church Order prohibiting the withdrawal of a local church or imposing any penalty or forfeiture if such a withdrawal occurred. Sometime in 1974, the Book of Church Order was amended to include a provision to this effect. Such provision was not in effect on 22 January 1974 when the Presbytery having jurisdiction over Trinity Presbyterian Church ratified that church's resolution of severance from PCUS pursuant to the guidelines adopted by that Presbytery.
On 25 September 1973 the Presbytery of East Alabama, having jurisdiction over Trinity Presbyterian Church, adopted a resolution which set guidelines for local member churches and member ministers who wished to withdraw from PCUS.[2] In accordance with these guidelines, Trinity Presbyterian Church held a congregational meeting and voted to adopt the following motion by a vote of 814 for and 112 against:
"* * * that Trinity Presbyterian Church of Montgomery, Alabama requests dismissal from the Presbyterian Church in the United States to the Presbytery of the Evangel of the Continuing Presbyterian Church [now Presbyterian Church in America]."
All the guidelines adopted by the Presbytery of East Alabama were followed.
The motion adopted by Trinity Church was a request to be dismissed from PCUS and not a unilateral withdrawal. An administrative commission of the Presbytery of East Alabama subsequently voted unanimously to dismiss Trinity Presbyterian Church, and the Presbytery ratified this dismissal on 22 January 1974. Neither the appellees/plaintiffs nor anyone else filed a complaint to this action of the Presbytery as allowed by § 117-1 of the Book of Church Order. The Synod did not attempt *865 to correct the action taken by the Presbytery in its yearly review of the actions of the Presbyteries under its dominion as provided for in §§ 114-1 and 114-2 of the Book of Church Order; furthermore, no injunction or protest of any form was issued to Trinity Presbyterian Church by the Synod or General Assembly in an attempt to stop the withdrawal. However, a complaint was duly made by a member of the Presbytery of East Alabama to the Synod in opposition to the action of the Presbytery in adopting guidelines allowing member local churches to withdraw. The Synod referred the complaint to the General Assembly. Again, no injunction was issued or other attempt made to suspend the effect of the dismissal resolution.
On 14 June 1976 (approximately two years, nine months from adoption by the Presbytery of guidelines for withdrawal) the General Assembly adopted as a final judgment a preliminary judgment issued by its permanent judicial commission which decreed:
"1) The action of the Presbytery of East Alabama in adopting the resolution in question is wholly unconstitutional, hence void and no effect;
"2) any actions taken thereunder by sessions, congregations, ministers or the administrative commission are similarly void and of no effect;
"3) any ministers purportedly dismissed thereunder remain within the jurisdiction of the Presbytery of East Alabama and subject to its constitutional authority until dismissed in accordance with proper procedures; and
"4) any churches purportedly dismissed thereunder remain within the jurisdiction of the Presbytery of East Alabama and subject to its constitutional authority."
After adoption of this decree or judgment contact was made with the attorneys for appellants/defendants in an effort by the appellees/plaintiffs to obtain the property in question without litigation. Prior to this contact, Trinity Presbyterian Church had received no communication from PCUS since Trinity's withdrawal. After negotiations failed, appellees/plaintiffs made demand for the surrender of the property, but appellants/defendants refused to surrender it. Subsequently, on 9 June 1977, appellees/plaintiffs filed this action. Prior to filing this action, PCUS officially recognized the six individual plaintiffs and any other members of Trinity Presbyterian Church who were loyal to PCUS as the true congregation of Trinity Presbyterian Church.

I
The primary issue in this case is what effect the civil courts of this state give to the decision rendered by the General Assembly of PCUS on 14 June 1976. The lower court found the decision of the General Assembly was an ecclesiastical one even though it affected property rights, and consequently held the case of Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871), required that such ecclesiastical decision be binding in the present litigation. That finding was erroneous.
The trial court gave too board an interpretation to the Watson case. While Watson clearly stands for the principle that civil courts cannot resolve disputes concerning spiritual or ecclesiastical affairs, and decisions of a hierarchical church's judicatories must be followed regarding such matters, it does not prevent civil courts from resolving disputes concerning civil or property rights. Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1977); Williams v. Jones, 258 Ala. 59, 61 So.2d 101 (1952). The U. S. Supreme Court recognized the right of civil courts to decide disputes concerning church property in Presbyterian Church v. Mary E. B. Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969) and in Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc., 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970). Both Hull and Sharpsburg clearly indicate that civil courts have authority to decide disputes concerning church property; however, civil courts cannot resolve controversies involving religious *866 doctrine or practice in deciding such property disputes. In other words, the courts must decide the property disputes by looking at so-called "neutral principles of law" and not resolve the underlying controversies over religious doctrine. Hull, 393 U.S. 440 at 449, 89 S.Ct. 601, 21 L.Ed.2d 658.
In this case, the issues involved clearly dealt with property; there was no need to decide any ecclesiastical issues in order to decide the property issues. The basic question in the case was: who were the members of the corporation; in other words, who owned the corporation and thus owned the church property? This was a legal question because it involved issues of property rights and the constituency of a legal entity created by statute. The courts in this state have long recognized the concept that, whenever there is an incorporated church, there exist two entities. Williams v. Jones, supra; Hundley v. Collins, 131 Ala. 234, 32 So. 575 (1901). Stated otherwise, there is a spiritual church and a secular legal corporation, each separate though closely connected. Each entity has a separate purpose. Questions involving the spiritual church are ecclesiastical in nature, and civil courts cannot decide any questions concerning this entity. In contrast, the secular corporate entity is formed by the state and performs civil functions, e. g., holding title to church property, and is in no sense ecclesiastical in its function; therefore, civil courts can decide questions concerning the corporation.
The trial court committed reversible error by allowing the General Assembly's decree to be binding in this litigation since the composition of the church's corporate structure was the principal issue to be determined. The trial court should have made its own independent determination of which group was entitled to dominion and control of the corporation following the standards set forth in Presbyterian Church v. Mary E. B. Hull Memorial Presbyterian Church, supra, and Maryland and Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc., supra.

II
We deem it necessary to render this particular case due to the delicate questions involved in church litigation combined with the particular facts of the case. Both appellants/defendants and appellees/plaintiffs ask us to decide whether Alabama follows the rule that all property held by local churches, whether incorporated or not, is held in trust for the denominational church body if that body is a hierarchical church. Appellants/defendants argue that Code 1975, § 10-4-22 allows a local church to unilaterally withdraw from a church denomination and retain dominion, control and possession of that local church's property free of the regulation and control of any higher church body unless: (1) an implied or express trust is clearly stated in the deeds or other instruments by which the corporation derives title to its property; (2) a majority of the members of the local church vote that the statute shall not be applicable; or (3) there was control of the property in a higher church body prior to the passage of the act. Appellees/plaintiffs, on the other hand, assert that Alabama has historically adopted the position set forth in Watson v. Jones, supra, that a local church that is a member of the denomination holds its property in trust for the higher church, and the local church cannot withdraw from the higher church body and maintain dominion and possession of its property if the highest tribunal of the higher church body decrees such withdrawal is forbidden. We need not decide that issue in this case since Trinity Presbyterian Church did not unilaterally withdraw from the PCUS but withdrew with permission.
Both appellants/defendants and appellees/plaintiffs cite numerous cases involving the withdrawal of a local church from a higher church body or organization; however, all of the cases cited are different from this case in one aspect. All the cases cited involved churches that either withdrew from a higher church body unilaterally or after permission to withdraw had been denied; furthermore, in all the cases the higher church body had attempted to stop *867 the local church from withdrawing by either issuing an injunction of its own, or by promptly filing a civil suit, or by taking some other action. See, e. g., Vogt v. State, 362 So.2d 1 (Fla.1978); Jones v. Wolf, 241 Ga. 208, 243 S.E.2d 860 (1978); Carnes v. Smith, 236 Ga. 30, 222 S.E.2d 322 (1976); Adickes, II v. Adkins, 264 S.C. 394, 215 S.E.2d 442 (1975), cert. denied, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975); Fairmont Presbyterian Church v. Presbytery of Holston, 531 S.W.2d 301 (Tenn.App.1975); Presbytery of the Covenant v. First Presbyterian Church of Paris, 552 S.W.2d 865 (Tex.Civ.App.1977). Certainly, in none of the cases cited, or that we have found, had a higher church organization given the local church permission to withdraw and then later tried to revoke that permission and gain control of the church property years after the local church acted on the permission and affiliated with another denomination, as was attempted in this case. We think this to be a very significant distinction.
In this case the six minority members of Trinity Presbyterian Church did not file a complaint with the Synod against the action of the Presbytery of East Alabama which granted Trinity Presbyterian Church permission to withdraw as provided for in the PCUS Book of Church Order, Part V, Chapter 17. Neither the Synod, the General Assembly, nor any other branch of government of the PCUS attempted to issue an order or injunction voiding or staying the permission granted to Trinity Presbyterian Church by the Presbytery. It would have been a simple matter for the Synod or the General Assembly to have ordered that no local church could withdraw from PCUS pursuant to the resolution adopted by the Presbytery of East Alabama until the General Assembly reached a determination of the constitutionality of the Presbytery's adoption of such a resolution. Nothing along this line was even attempted. Trinity Presbyterian Church was simply informed that its request had been accepted, and, consequently, Trinity acted upon that information, ceased any further communications or affiliation with PCUS, and joined another denomination. We, therefore, hold that the failure of the appellees/plaintiffs to follow the proper remedies provided for by the PCUS Book of Church Order made the adoption of Trinity Presbyterian Church's request for dismissal by the Presbytery of East Alabama final. Appellees/plaintiffs are now estopped from asserting any possible rights to dominion, possession, and control of the church corporation, and its property, in the civil courts of this state.
The situation in this case is analagous to the situation where a party fails to exhaust its administrative remedies; such failure usually bars relief in the courts. See Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin, 294 Ala. 201, 314 So.2d 663 (1975); Simpson v. Van Ryzin, 290 Ala. 22, 265 So.2d 569 (1972). Here, the appellees/plaintiffs did not follow the remedies provided by the PCUS Book of Church Order. While the determinations of the judicatories of PCUS would not have been binding as to preclude the civil courts of this state from determining property rights in subsequent litigation, it would have put appellants/defendants on notice that their release from PCUS was being contested and might not be permissible under the laws of PCUS. Appellants/defendants would then have had an opportunity to defend the action of the Presbytery of East Alabama, in releasing Trinity Presbyterian Church, before the Synod and the General Assembly. Since appellees/plaintiffs failed to pursue these remedies at the proper times, we will not allow them to now try to nullify Trinity's dismissal from PCUS.
For the stated reasons, we reverse the final judgment of the lower court and hold: (1) the appellants/defendants are entitled to possession, dominion, and control of Trinity Presbyterian Church of Montgomery, Alabama, the corporation, and all property owned by that corporation; (2) the relief granted to appellees/defendants in the *868 judgment of 14 July 1978 is erroneous and of no effect.[3]
REVERSED AND RENDERED.
FAULKNER, ALMON, SHORES and BEATTY, JJ., concur.
TORBERT, C. J. and MADDOX, J., concur specially.
BLOODWORTH and JONES, JJ., recuse themselves.
MADDOX, Justice (concurring specially).
I concur in the judgment rendered, because neither the Constitution of the PCUS nor the charter of Trinity Presbyterian Church contains language requiring that disputed property be turned over to PCUS. In view of this fact, I believe this case is controlled by Jones v. Wolf, ___ U.S. ___, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), where the Supreme Court of the United States, by a narrow vote, modified the 100-year-old rule of Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871), by holding that a denomination has a claim to the property of a local congregation only if the denominational constitution contains language requiring that disputed property be turned over to the denomination or if the charter of the local church contains similar language.
TORBERT, C. J., concurs.
NOTES
[1] The decision declared the resolution of the Presbytery of East Alabama allowing local churches to withdraw to be null and void and that any churches dismissed pursuant to that resolution remained subject to the jurisdiction of the Presbytery of East Alabama.
[2] Book of Church Order § 16 7(8) gives the power to receive and dismiss churches to the Presbytery.
[3] This decision was written before the release of Jones v. Wolf, ___ U.S. ___, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), by the United States Supreme Court; however, Jones appears to support our holding in this case.