PER CURIAM.
Alford Walters, the pastor of the New Life Fellowship Church, an unincorporated religious association in Mobile County, appeals from a judgment entered on a jury verdict in favor of Rose Stewart, Joe A. Hicks, and Marie Adair. Stewart, Hicks, and Adair are members or former members of the Bread of Life Church, the nominal predecessor of the New Life Fellowship Church. The three individuals sued to compel Walters to resign his pas-torship of the New Life Fellowship Church and to relinquish control of disputed church property.
In 1990, John Loper founded the Bread of Life Church in Mobile County; Loper was the church’s first pastor. In 1994, Loper and his wife deeded the property at issue in this case to James Davis and Tommy Stewart, as trustees of the Bread of Life Church. Tommy Stewart was the husband of appellee Rose Stewart and, after the death of Rev. Loper, he became the second pastor of the church. Rose Stewart was the church secretary, the keeper of the church records, and the custodian of the church bank accounts. Rev. Stewart died in 1998, and Joe A. Hicks became the third pastor.
In late 1998, Hicks left Mobile County to preach in Mississippi, and he “turned the pastorship [of the Bread of Life Church] over to Alford Walters.” Walters accepted. Rose Stewart accompanied Walters and his wife Shirley to the bank, and they “transferred the church bank accounts” to Rev. and Mrs. Walters.
Walters changed the name of the church from the “Bread of Life Church” to the “New Life Fellowship Church.” On December 4, 1998, Walters and his wife signed a warranty deed purporting to convey the church property from the Bread of Life Church to “Reverend Alford Walters, Senior Pastor and President, and Shirley Walters, Co-Pastor and Vice-President, as trustees for the New Life Fellowship Church (formerly known as the Bread of Life Church), an unincorporated association.” On the same day, Walters signed a quitclaim deed reciting
“that the grantor, Bread of Life Church, for and in consideration of the sum of One and no/100’s ($1.00) Dollars and other good and valuable considerations in hand paid to the said grantor by New Life Fellowship Church, Rev. Alford and Shirley Walters hereinafter called the grantee, does hereby remise, release, quitclaim and convey unto the said grantee, the heirs and assigns forever, in fee simple ... all of its right, title, and interest in and to that certain real property [described] .... ”
In early 1999, Walters and his wife moved into the church building; they converted an adult Sunday school room into their bedroom, the church fellowship hall into their kitchen/living-room area, and one of the church restrooms into their residence bathroom. They kept a dog pen in the back of the churchyard, and they hung their wash on a clothesline outside.
Church attendance, which had previously been between 20 and 30 worshippers at any given service, dwindled to less than 5 attendees. Joe Adair testified that he and the other members of the church board *1050 tried to have a meeting with Walters to ask him to resign as pastor, but Walters refused to meet with them. Then, in April 1999, Stewart, Hicks, and Adair sued to have Walters removed as pastor of the church, to have the church bank accounts returned to them, to have the church property deeded to them as trustees, and to have an accounting of the church funds spent by Walters.
The jury returned a verdict for Stewart, Hicks, and Adair, accompanied by answers to three special interrogatories. The jury specifically found (1) that Walters “should be removed from the church as pastor,” (2) that the property “should be deeded back to the church,” and (3) that Walters should reimburse the church $1,180. Walters appeals, raising two issues. Initially, we note that our review is limited by the following principles:
“The First Amendment prohibits a court from resolving disputes on the basis of religious practice or doctrine. Presbyterian Church v. Mary Elizabeth Blue Hull Mem’l Presbyterian Church, 393 U.S. 440, 449, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). Despite these constitutional limitations, the courts still have jurisdiction to decide cases concerning questions of civil or property rights. Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala.1976); Trinity Presbyterian Church v. Tankersley, 374 So.2d 861, 865 (Ala.1979). ‘[T]he courts must decide the property disputes by looking at so-called “neutral principles of law” and not resolve [any] underlying controversies over religious doctrine.’ Tankersley, 374 So.2d at 866. The issue of who holds title to church property is a civil matter and is not ecclesiastical in nature. Id.”
Murphy v. Green, 794 So.2d 325, 330 (Ala.2000).
Walters first argues that Stewart, Hicks, and Adair had no standing to sue him because, he says, they were no longer members of his church and before they filed suit they had stopped attending services and had relinquished all interest in the workings of the church. The record, however, does not bear out Walters’s claim. Marie Adair testified that she was one of the founding members of the church, that she had taught Sunday school, and that she had continued to attend church services after Walters became the pastor, but that, after Walters and his wife moved into the church building, attendance dwindled “down to nothing.” She stated that the last time she went to church only four people were there — Rev. and Mrs. Walters, herself, and her granddaughter— and Rev. Walters suggested that they attend a service at another church. Adair said that, after that incident, she “just quit going. After we wasn’t having no service, I quit going.”
Rose Stewart testified that she stopped going to church because she did not approve of the Walterses’ having moved into the church building, but that she “did not relinquish” her membership or her position as a member of the church board. Joe Hicks testified that although he had been a visiting preacher in other churches, he had never resigned from the church board and he still considered himself a member of the Bread of Life Church. Hicks stated that he disapproved of Walters’s having changed the name of the church and using the church building as a residence. He stated that when he “[came] back [to Mobile] and found out what [Walters] was up to, [he] called a meeting [with] Sister Rose [Stewart] and Sister Marie [Adair] ... to stop [Walters] from moving in that building.”
Standing turns on “ ‘whether the party has been injured in fact and whether *1051 the injury is to a legally protected right.’ ” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027-28 (Ala.1999) (quoting Romer v. Board of County Comm’rs of County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting)). One has standing if he or she has “a real, tangible legal interest in the subject matter of the lawsuit.” City of Hoover v. Oliver & Wright Motors, Inc., 730 So.2d 608, 611 (Ala.1999). A party has standing “ ‘if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.’ ” Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974) (quoting Har-man v. City and County of San Francisco, 7 Cal.3d 150, 151, 101 Cal.Rptr. 880, 886, 496 P.2d 1248, 1254 (1972)).
The record does not contain any written rules or governing documents relating to the organization, structure, or polity of the Bread of Life Church. We are not informed as to the requirements for membership, the powers and duties of the church board, or the function of trustees. Although Stewart, Hicks, and Adair testified that they were members of the church “board,” they conceded on cross-examination that they had no documentary evidence of their having been elected, appointed, or otherwise designated to act in that capacity. Although Walters challenges the standing of Stewart, Hicks, and Adair based on what, he says, is their current nonattendance at church services, our supreme court has held that even former church members have standing to sue when the issues are their alleged wrongful expulsion and the claimed misappropriation of church funds by the minister. See Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1976). Stewart, Hicks, and Adair claim, in effect, that Walters’s usurping the church building for his personal residence has resulted in a wrongful expulsion of church members who desire to use the facility for worship. In addition, Stewart, Hicks, and Adair claim that Walters has misappropriated church funds. We conclude that the circuit court properly rejected Walters’s argument that Stewart, Hicks, and Adair lacked the standing to sue.
Walters next claims that the action against him should have been dismissed for failure to join his wife Shirley as a party under Rule 19, Ala. R. Civ. P. Rule 19 provides, in pertinent part:
“(a) Persons to Be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person’s absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person’s absence may (i) as a practical matter impair or impede the person’s ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. ...
“(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(l)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. ...”
Walters moved the court, both before and during the trial, to require the joinder of Shirley Walters or to dismiss the complaint. The trial court denied the relief requested without comment. On appeal, *1052 Walters argues that Shirley is an indispensable party because she is a grantee named in the deeds to the real property and she is a signatory on the church bank accounts.
“Rule 19, [Ala.] R. Civ. P., requires a two-step process. The first concerns the question of whether someone who is not a party to an action should be joined as a party. Rule 19(a). If that question is decided in the affirmative, and for some reason the absent party cannot be made a party, then the court must determine whether the action should proceed. Rule 19(b). The factors of Rule 19(b) are to be applied only if joinder is not feasible. Withington v. Cloud, 522 So.2d 263 (Ala.1988). In this instance, we are concerned only with the first process under Rule 19(a) because, from all indications, the joinder of [Mrs. Walters] is certainly feasible.”
Hoeck v. Hoeck, 545 So.2d 786, 787-88 (Ala.Civ.App.1989). We apply the abuse-of-discretion standard to review a trial court’s decision as to whether a party was indispensable. American Family Care, Inc. v. Irwin, 571 So.2d 1053 (Ala.1990); Ross v. Luton, 456 So.2d 249 (Ala.1984). Walters, as the party seeking the dismissal for failure to join a necessary party, had the burden of showing that his wife’s presence was necessary to the action; this he failed to do.
By the deed of December 4, 1998, Alford Walters and Shirley Walters purported to convey the church property from the Bread of Life Church to “Reverend Alford Walters, Senior Pastor and President, and Shirley Walters, Co-Pastor and Vice-President, as trustees for the New Life Fellowship Church (formerly known as the Bread of Life Church), an unincorporated association.” That conveyance purports to vest in Alford and Shirley Walters the legal title to the church property as cotrustees for the benefit of the church congregation. The Bread of Life Church, however, could not convey, in its own name, any interest in the church property to Walters and his wife as cotrustees of the New Life Fellowship Church; Walters’s wife, therefore, is not necessary in order to “reconvey” the church property. An unincorporated association formed before 1996 was without capacity to acquire, hold, or convey legal title to real property. Adams v. Bethany Church, 380 So.2d 788 (Ala.1980). When a deed of trust is made to trustees for an unincorporated association, the title remains in the trustees. Street v. Pitts, 238 Ala. 531, 192 So. 258 (1939).
In 1996, the Legislature enacted the Alabama Unincorporated Nonprofit Association Act, see Act No. 95-527, Ala. Acts 1995 (codified at § 10-3B-1 et seq., Ala.Code 1975), allowing, among other things, an unincorporated association to hold property in its name. § 10-3B-5. Statutes affecting vested rights or altering legal status are substantive and are denied retrospective application. State Home Builders Licensure Bd. v. Grzelak, 705 So.2d 406 (Ala.Civ.App.1997). Therefore, § 10-3B-5 would not automatically vest title to the church property in the Bread of Life Church because before 1996 title was held in the names of trustees James Davis and Tommy Stewart. After 1996, if the members of The Bread of Life Church had wanted the church, in its own name, to be authorized to transfer title, then the church members would have had to comply with § 10-3B^4 with regard to governance of the church and execute and record a statement of authority as to the transfers of real property pursuant to § 10-3B-6. Also, the Bread of Life Church could have incorporated. When an unincorporated religious association is incorporated, legal title to real property will pass to the incor *1053 porated religious association, regardless of whether legal title is considered to have remained in the grantor or the grantor’s heirs, members of the unincorporated church, or in the trustees of the church and passed to the church upon incorporation. Adams v. Bethany Church, 380 So.2d 788 (Ala.1980). Walters made no showing that the Bread of Life Church either complied with §§ 10-3B^4 and -6, or incorporated before December 4, 1998, the date of the purported conveyance to Walters and his wife.
Chief Justice Heflin, in his special writing concurring in the result in Murphy v. Traylor, 292 Ala. 78, 85, 289 So.2d 584, 590-91 (1974), stated:
“In the usual situation, the persons who constitute an unincorporated association will have made some sort of agreement or will have established a constitution and by-laws for the government of the association. Unless justice and equity dictate otherwise, the actions of the duly constituted authorities, acting in accordance with its rules and regulations or under a mandate of the majority should be binding on the association. Naturally a corollary to this rule would be that if the constituted authorities act outside the scope of the conferred authority, the acts would not bind the association. See Pallilla v. Galilee Baptist Church, 215 Ala. 667, 112 So. 134 (1927).
“In the event the association has no written constitution or by-laws, absent a valid reason for not so doing, the court likely would adhere to the cases which hold that in democratic church organizations, the majority controls as a rule. See Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947 [(1909)]; Harris v. Cosby, 173 Ala. 81, 55 So. 231 (1911); Guin v. Johnson, 230 Ala. 427, 161 So. 810 (1935).”
Nothing in the record indicates that Walters and his wife were ever duly appointed as successor trustees to James Davis and Tommy Stewart.[1] While Walters was named as pastor of the church and both he and his wife were signatories on the church’s checking account, nothing indicates that they were appointed or elected as trustees for the Bread of Life Church. The 1994 deed from the Lopers does not provide any guidance as to how successors to the named trustees are appointed. There is nothing in the record as to what the bylaws or any other organizational documents of the Bread of Life Church provide regarding the appointment or election of successor trustees. Nothing in the record indicates that the majority of the church members voted to have Walters and his wife succeed Davis and Stewart as trustees.
In Long v. Vielle, 549 So.2d 968 (Ala.1989), Yvonne Vielle sued Athalie Long, seeking reformation of a property deed to include a third lot in addition to two lots specifically described in the deed. Long argued, among other things, that Sharon Long, her daughter, should have been made a party to the suit because Sharon had purchased the third lot at a tax sale. Long argued that Sharon was an indispensable party whose rights were adversely affected by the judgment entered and that the judgment was therefore void for failure to join Sharon as a party. The supreme court held:
*1054 “In the case at bar, the evidence is undisputed that Sharon Long purchased the property from the State of Alabama for back taxes. It is also without dispute that Sharon Long lived directly across the street from the property in dispute. Furthermore, at all times subsequent to 1979, Sharon Long had knowledge of Vielle’s claim to the property. In fact, Sharon Long was present and actually testified at the trial of this matter. Accordingly, she had ample opportunity to be heard on issues pertinent to a determination of proper title to the property in question. Therefore, Sharon Long is not within that class of parties who are guaranteed protection by Rule 19 [Ala. R. Civ. PJ. Consequently, based on these facts, we fail to see how any prejudice to Sharon Long results by the trial court’s judgment. Sharon Long was not ‘absent’ within the contemplation of Rule 19(a), Ala. R. Civ. P.”
549 So.2d at 973. In the present case, Walters’s wife knew of the church members’ claim to the church property. She also testified at the trial.
Based on the foregoing, we cannot say the trial court abused its discretion in not dismissing the action against Walters for failure to join his wife as a necessary party pursuant to Rule 19.
The judgment of the circuit court is affirmed. The appellees’ request for an attorney fee on appeal is denied.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.

. According to the record, Tommy Stewart is now deceased. James Davis appears to be the surviving trustee. A trust will not fail for lack of a trustee. Sections 19-3-250 and 19-3-251, Ala.Code 1975, give circuit courts the power to appoint a successor trustee when a vacancy arises and the trust instrument does not provide a method for appointing a successor trustee. Creel v. Martin, 454 So.2d 1350 (Ala.1984); see also Arnold, v. Methodist Episcopal Church, 281 Ala. 297, 202 So.2d 83 (1967).