S96A0512. GEORGIA DISTRICT COUNCIL OF THE ASSEMBLIES OF GOD, INC. v. ATLANTA FAITH MEMORIAL CHURCH, INC. et al.

(472 SE2d 66)

HINES, Justice.

This is a dispute between the Georgia District Council of the Assemblies of God (District Council) and a former member church, Atlanta Faith Memorial Church (Memorial), over the ownership of church property.[1]

On February 12, 1991, Memorial deeded its real property to the Beyth Tehillah Religious Trust (Religious Trust), and on October 28, 1994, the Religious Trust sold the property for $1,950,000. Shortly thereafter, Memorial voted unanimously to disaffiliate from the District Council.

The District Council initiated this action against Memorial, the Religious Trust, and four individuals involved with the leadership of Memorial seeking to recover the proceeds from the sale of the local church's property. It asserted an implied trust, breach of contract, fraud, conversion, and trespass. The superior court granted Memorial's motion for summary judgment, concluding that the District Council did not establish a legal right to the proceeds from the sale of Memorial's real property. The court reasoned that a "reversionary interest" referred to in the District Council's Bylaws, on which the District Council primarily based its claims, only applied to real property owned by Memorial at the time of disaffiliation, and because Memorial did not own any real property when it voted to disaffiliate, no legal interest was vested in the District Council. Furthermore, the court concluded that the language of the bylaws and applicable documents did not create an express or implied trust and nothing prohibited Memorial from transferring its property to the Religious Trust. The District Council appeals from the ruling, and we affirm.

1. The District Council asserts that the superior court erred in

---

[1] The District Council is a non-profit corporation consisting of over 200 individual Assemblies of God Churches in Georgia. Memorial became a member church of the District Council in 1936, and remained a member until it voted unanimously to disaffiliate on December 1, 1994.

concluding that Article VIII, Section 7, of the Constitution and Bylaws of the Georgia District Council Assemblies of God (Bylaws), created an interest in only *real property* owned by Memorial at the time of disaffiliation. It contends that the interest applies to *all property*. We disagree.

Our determinations regarding the ownership of the disputed church property must be limited to neutral principles of property and corporate law with no admixture of doctrinal concerns. *Jones v. Wolf*, 244 Ga. 388 (260 SE2d 84) (1979); see also *First Evangelical Methodist Church of Lafayette v. Clinton*, 257 Ga. 459 (360 SE2d 584) (1987). Accordingly, we look to "neutral statutes, corporate charters, relevant deeds, and the organizational constitutions of the denomination" to determine the disputed church property and who has the right to control it. *Jones*, supra at 390.

In *John P. King Mfg. Co. v. Clay*, 218 Ga. 382, 386 (1) (128 SE2d 68) (1962), this Court stated that:

> In the construction of the provisions of a corporate charter the same rule applied in the construction of statutes and contracts prevails, and that rule is as follows: Where general words in the charter are followed by a description of specific objects, the meaning of the general words ordinarily will be presumed to be limited to the enumerated specific objects and to include only those things of the same nature as those specifically enumerated unless a clear manifestation of a contrary intent appears from the charter. [Cit.]

Article VIII, Section 7, of the Bylaws provides that:

> If all members of the local assembly shall vote to disaffiliate from the Assemblies of God for doctrinal or any other reasons, then all of the property shall revert to the Georgia District Council and shall be used by the District as an Assemblies of God church if possible, and if not possible, the District may sell the property and apply the proceeds in any manner consistent with its stated purpose.

The general language, "all of the property shall revert . . .," is immediately followed and defined by the more specific language which provides that the disaffiliating assembly's church property shall be used as an Assemblies of God church, and if not possible, the property may be sold. Because the language evidences the clear intent that the property continue to be used as a church or be sold, the provision is unambiguous in limiting the interest to real property. See *John P. King Mfg. Co.*, supra.

2. The District Council contends that the reversionary language in Article VIII, Section 7, of the Bylaws, and other relevant documents raise a genuine issue of material fact as to whether an express

or implied trust was created for its benefit. We do not agree.

A review of the documents shows that Memorial remained autonomous and in control of its property during membership in the District Council.[2] See *Jones v. Wolf,* supra at 389-390 (4). Therefore, the District Council lacked the authority to grant itself a reversionary interest in the disputed property, because it never had control or ownership of Memorial's property. See OCGA § 44-6-60 (b). At most, the language granted the District Council a conditional estate that would vest upon the condition that Memorial voted unanimously to disaffiliate and possessed real property at that time. See OCGA § 44-6-40. It did not create a vested interest in Memorial's property, only a possibility of an estate upon the occurrence of an event. See *Lassiter v. Bank of Dawson*, 191 Ga. 208, 216 (3) (11 SE2d 910) (1940).

Because Memorial was autonomous, had control and enjoyment of its property at all times during membership, and the District Council did not have a vested interest in the property, as a matter of law no express or implied trust was created for the benefit of the District Council. Compare *Crumbley v. Solomon*, 243 Ga. 343 (254 SE2d 330) (1979) (holding that an implied trust for the benefit of the general church was created by certain language in the church disciplinary rule), and *Carnes v. Smith*, 236 Ga. 30 (222 SE2d 322) (1976) (holding that an implied trust was created in favor of the general church because of express language in the book of discipline).

3. The District Council contends that the superior court erred in finding that the language of Article IX, Section 7 (c), of the General Council Constitution and Bylaws, did not prohibit Memorial from transferring the real property to the Religious Trust. The contention is without merit.

Nowhere does Article IX, Section 7 (c), state that the local church cannot transfer property to a trust. It merely provides that the General Council "disapproves" of such transfers and that the transfer shall "seriously affect the relation of the Assemblies of God members involved." The superior court correctly determined that Memorial was not prohibited from transferring its property to the Religious Trust.

4. The District Council further argues that the superior court erred in finding that no genuine issue remained regarding the existence of a constructive trust, and that it was not allowed meaningful discovery regarding this claim. We do not agree.

"A constructive trust arises with respect to property the title to

---

[2] Article X, of the Bylaws, provides that each local church "shall have the right to acquire and hold title to property, either through trustees or in its corporate name as a self-governing unit . . . ," and "[t]he fact that a local assembly is affiliated in the association of the District or General Council shall in no wise destroy its rights as above stated or interfere with its sovereignty." Furthermore, Article VI, Section 4, of the Constitution and Bylaws of the General Council of the Assemblies of God, states that "affiliated churches are deemed to be sovereign, autonomous, and self-determining bodies . . . ."

which was acquired by fraud, or where although acquired originally without fraud, it is against equity that the title should be retained by the one who holds it." *Kelly v. Johnston,* 258 Ga. 660, 661 (1) (373 SE2d 7) (1988). The District Council asserts that a genuine issue of material fact remains regarding the existence of a constructive trust because Memorial transferred the property to the Religious Trust with knowledge of its "reversionary interest." The contention fails. A constructive trust cannot arise in this case because neither the relevant church documents nor anything else provided the District Council with a legal or equitable interest in Memorial's real property. Therefore, Memorial was free to transfer and sell its property as it desired during its membership, and as a result, issues of fraud and related discovery are not relevant in determining the ownership of the disputed church property. See *Chelena v. Ga. Federal Savings &c. Assn.,* 256 Ga. 336, 337 (349 SE2d 180) (1986).

5. The remaining contentions of error are rendered moot by our determination that the District Council had no legal or equitable interest in the proceeds from the sale of Memorial's property.

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs in Divisions 2, 3, 4, 5, and in the judgment.*

DECIDED JULY 1, 1996 —
RECONSIDERATION DENIED JULY 17, 1996.

*Bird & Myers, Wendell R. Bird, David J. Myers,* for appellant. *Dale A. Allison, Jr., John D. Simmons,* for appellees.